We have four argued cases this morning. The first one is number 16-1773, Richmond v. Coleman Cable, LSC, in Benavidez? Is that how you pronounce it? Yes, Your Honor, Benavidez. Okay, you're first. Oh, I'm sorry, you guys decided to change the order. Mr. Shields. Yes, Your Honor. And we only want to hear rebuttal argument from one of you. I'm sorry? We only want rebuttal argument from one of you. Yes, we're aware of that. Okay, thank you. Go ahead, Mr. Shields. May it please the Court, I am Theodore Shields of Shields Law Firm, P.C., attorneys for patent owner and appellant, Simon Richmond. I will address the surround frame claims 1 and 4. I'm dividing my time with my co-counsel, Marcus Benavidez, who will address the Winshine claims. Your Honors, in IPR's claims are given their broadest reasonable interpretation. Here the board read the specifications may surround language, may surround the lens in three dimensions phrase as creating a, quote, possibility, unquote, of a three dimensional surround frame. The board construed the surround frame based upon this as being any shape in three dimensional space with no limit. But, Your Honors, even the broadest reasonable interpretation is not the broadest reasonable interpretation. Let me ask you a question. Yes. You argue in the blue brief that, I'm quoting from page 56, since glare is an abhorred lighting condition. But, previously in the blue brief, at page 5, you say lighting designers abhor a lighting condition called glare. And, I'm quoting from JA 4233, from my work experience in constructing prototype lighting fixtures, then glare is an important consideration because lighting designers abhor it. With that in mind, can you tell me if the Winshine pendulum disclosed in 370 is a lighting fixture? It is a lighting fixture, Your Honor. What evidence in the record supports that? That it's a lighting fixture? Yes. It has an LED and batteries and a solar panel to provide power to illuminate the pendulum. But, if I may, Your Honor, I'm really addressing the surround frame claims, which is a separate set of claims. Can my co-counsel address the Winshine claims? All right. If you would prefer, I could have him come up now and he could do a better job. No, I'll ask that. All right. Let me ask you this. Yes. Since you're doing surround frame, in the red brief, Appali poses the question, did Richmond waive his claim construction arguments for surround frame by proposing for the first time on appeal a 13-word VRI interpretation that is significantly different in scope from the 92-word broadest reasonable interpretation he argued before the board? Explain to me why you didn't waive that argument. Let me say this. Yes. To me, it appears you're not presenting an argument consistent with the one raised in front of the PTAB. You've substantially changed the scope of what was argued. Okay. If I may, Your Honor, we did present the same concept below. Yeah, you used that word concept. Yes. And that is in this court's case law, that where the same concept is presented below and there's no practicable difference, that there is no waiver. And here, what we presented below, it is agreed. There's a substantial difference. The substantial difference, Your Honor, the difference is not case dispositive. The other differences were subsidiary points relating to how thick a surround frame could be or its maximum limits of thickness, which is supported by the extrinsic record, and also the subsidiary points related to how far partially would extend. And those issues are separable from the one being argued here. And the one being argued here is the central core, which is the meaning of surround frame. It is unnecessary to decide, for purposes of this appeal, the thickness or the extent of the partiality. And so, Your Honor, we respectfully submit that we did not waive the central concept, which was presented separately to the court below. Three different claim constructions were offered by Richmond. And they had substantive differences among them. And you've got all three of them subsumed into this in 13 words. Your Honor, the only thing that's in the 13 words relates to the primarily in a plain character of the surround frame. And that is the only character that is necessary to decide the court appeal. And so that's what we argued. Everything else that was in our claim construction below was well supported by at least the extrinsic record, but it's unnecessary to decide those points, and that's why we're not pressing them here. But undeniably, the primarily in a plain character was what we argued below, and it was the central part of our argument and was separately addressed and argued in that way. I find your argument that you're basically—you have the same concept in place, and I'm kind of troubled by that. I mean, we're looking at a claim construction, so we're looking at the preciseness of language, of words, not general concepts. And when you're arguing below a particular words, set of words, and you come to us and there's a different argument because there's different words added to it, and you say, well, Your Honor, it's the same concept. I don't think our case law supports that. Your Honor, we are arguing the same interpretation. We are arguing it with fewer words and fewer limitations. If anything, our construction now is broader than what we presented below because our construction below had additional limitations that we're not currently arguing. Just because we're not currently arguing— So you are arguing a different claim construction. We are arguing only a portion of our claim construction argument below. That is, we're arguing a broader— See, the problem is if you change claim construction arguments and you're presenting something different to us, then that means that the board below didn't hear that argument, and it's not part of its decision, and that presents the waiver issue. I understand that presents a waiver issue, Your Honor. It's an issue, but I don't believe that it's properly—well, I don't believe it properly applies here because what we presented was, in essence, if you will, like a main claim and then dependent limitations. We're only arguing the main claim, the main claim portion of the construction below, and that is the primarily in a plain character. It's the primarily—what we argued below was that it had a primarily in a plain character and a certain limited reasonable thickness and a certain extent regarding the language partially. So we were construing a different term, partially, in that sense. And so as far as surround frame, we are presenting exactly the same construction, the primarily in a plain surround frame. That is what we presented below, and that's what we're presenting here. And if I may, what's—here, what the board did is the board read the specifications may surround the lens in three dimensions as creating a possibility of a three-dimensional surround frame, but the broadest possible interpretation is not the standard. Here, the board's ERI would encompass enveloping three-dimensional hyperbolic spherical shells, and it's unreasonable. It's unreasonable because without rebuttal, it causes the prior art of record that was considered by the exam, Richmond 101 and ALSOP, and it's expressly found that that prior art did not teach all the elements. The claim construction adopted by the board, in fact, causes the claim, Claim 1 and Claim 4, to read element for element on at least those claims. And this violates the 35 U.S.C. 282 presumption of validity and decades of this court's precedent, holding that where possible, claims should be construed to uphold validity. That does not occur with Richmond's proposed construction. In fact, it didn't occur with the proposed construction with additional limitations relating to thickness and partiality below, and it does not occur with the core of the construction. Counselor, how does your proposed construction read to the specification? You're looking for something that's partially, that's basically one-dimensionally flat, yet the specification says it may surround the lens portion in two or three dimensions. If it's three-dimensional, isn't that inconsistent with your argument that it must be just flat, one-dimensional? Your Honor, we're not saying that it must be flat. What we're saying is that it must be construed in light of the specification and the drawings, and the drawings show at best a contour. And that was discussed by Dr. Shackle and also our experts. And the degree of contour is some degree of three-dimensional aspect, and perhaps that's what was being discussed in that section. But the fact is that the examiner clearly did not understand the claims to encompass a sphere or a hyperbolic shell. That's not what the examiner understood. It's what the applicant says. Your Honor, it's not just the prosecution history, if I may, including the prior art, forms part of the intrinsic record. And the prosecution, the prior art of record clearly shows that under the construction adopted by the board, there is anticipation of Claim 1 and also Claim 4. And that, I submit, Your Honor, is not a reasonable construction. That's not the way claim construction works. Under that theory, you'd never have an invalid patent because you'd always construe it to avoid invalidity. That's not the rule. Your Honor, that is not a per se rule. But we are talking about evidence that we are talking about prior art of record that the examiner considered and expressly found that, as he understood the broadest reasonable interpretation, would not be encompassed by the prior art of record. And while it's not a per se rule, where this court is presented with two possible constructions, and I submit that Richmond's was a possible construction, it met claim construction requirements. It read on the preferred embodiment and otherwise was a perfectly permissible construction, that what they chose was a construction that read directly on the prior art of record. And that, I submit, is not a reasonable construction and violates the presumption that the patent was issued, was valid when it was issued. And I'd like to reserve the rest of my time. Oh, if I may, I'll say just a few words on Claim 4. Claim 4 adds the words, encircles the lens. Okay, you're out of time. There was clearly no way. You're out of time, Mr. Schultz. Okay, I'm sorry. Mr. Benavides? Yes. Your Honor, I'd like to provide two minutes of my time to Mr. Schultz for rebuttal, and I'll take three. Your Honor, Judge Walsh, thank you for having me here. Marks Benavides. To your question, I believe you were referring to some of Dr. Shackle's testimony. Is it a lighting fixture? And your question was whether the claimed invention was a lighting fixture, and Mr. Schultz indicated that it was, and yes, it is. The patent indicates that. I believe the question you're asking is whether Dr. Shackle, in referring to glare as pertinent to lighting fixtures, in that testimony, he was being asked about glare in the context of the invention. Specifically, he said that we were talking about the display effect and how Dr. Ducharme had used that term, and there's evidence there from Dr. Shackle that he knew what that term was. And that term implicated glare. In other words, display effects use glare. And later on in the questioning, he says, when asked about whether there are ways of calculating glare, he said not so much calculating but in taking account in the design of lighting fixtures. So I believe the testimony of Dr. Shackle should be taken as a positive for the appellant in terms of tying glare as an abhorrent lighting effect to evidence of non-obviousness, in fact, strong evidence of non-obviousness. And what we have in the claimed invention, and I think this court has said it, is that non-obviousness, and I'm quoting from Dupuis, is especially strong where the prior arts teaching undermined the very reason being offered as to why a person of ordinary skill would have combined the known elements. We believe that evidence of non-obviousness glare being abhorrent and in a big-time consideration, that's the words of Dr. Shackle, is evidence that undermines the reason that persons of ordinary skill would have combined the inventions of Kubey Nguyen. And so we can look through the evidence. It's not consistent with the evidence at issue. Lighting, for example, Dr. Shackle said that glare is a big-time consideration. It's an important consideration when lighting designers are at court. Very important to make sure they don't experience glare. And one thing to note is that the decision of the board has no discussion of this. There is one discussion of glare, page 16. It talks about the relevance. It actually affirms the relevance of glare and it also undermines the evidence that Dr. Shackle said that minimized glare. So how is the wind chime pendulum a lighting fixture? As opposed to that from which it hangs. Well, we can also draw a comparison also to Kubey also, which involves a lighting fixture. It calls it a solar fixture. And one of our arguments there is that you wouldn't have combined the solar fixture. So that's a term of art that applies to wind chimes as well. So there's a connection there. But in the patent itself, it describes a wind chime, as we all know, but that has a solar fixture with a light put into the pendulum assembly such that the pendulum assembly emits light. So in that sense, it is a fixture. And I'm going to cede the remainder of my time for rebuttal. Mr. Nelson? Maybe you can shed some light on this for us. Good morning, Your Honors. Mark C. Nelson for the appellees. So the claims here are divided into two groups, the surround frame claims and the wind chime claims. I want to first address the surround frame claims. Here, as counsel indicated, the dispute here is whether the claim is properly limited to this primarily in a plane structure. And the intrinsic evidence certainly does not support that. As some of the court's questioning noted, the intrinsic evidence specifically rebuts that primarily in a plane construction. You have the specification talking about the surround frame maybe partially encircling the lens or maybe partially or fully surrounding the lens in two or three dimensions. That's very clear evidence from the specification that the surround frame is a three-dimensional structure. If you look at the claim language, the Board looked at the claim language, and the surround frame first appears in Claim 1. In Claim 1, the limitations on surround frame is it has to be attached to this connecting frame support structure, and it has to receive light, at least be partially lit from below. Other than that, there isn't any limitation on what a surround frame is or isn't. The Board then looked at Dependent Claims 4 and 50, and based on claim differentiation, decided that encircle and surround have different meanings and that the surround frame of Claim 1 must be broad enough to encompass both. They looked at Claim 49, which talks about the surround frame having different geometric shapes. It could be an insect, it could be a flower, it could be other things. There's no indication based on the claim language that these are limited to two-dimensional structures, and if you take the specification, Richman clearly understood how to use the term 2D and 3D. So if there was any intention in the claims to limit these to two-dimensional structures, he should have put two-dimensional structures in there. The specification clearly indicates that he contemplated that, looked at it, and decided, no, that's not what I want. So then turning to the prosecution history, that also supports the Board's construction. Claim 50 was added by amendment, and it was added to add the phrase, the surround frame partially surrounds the lens. It doesn't say anything about dimensionality. But what Richman said in the context of that amendment was that he was adding it in reference to paragraph 152 of the application, which is the paragraph that describes the surrounding two or three dimensions. So the prosecution history also is consistent with everything else here. So I want to turn... First, counsel mentioned this a little bit. He makes an argument based on the prosecution history and this reasons for allowance based on this Alsop and Richman reference, which we didn't assert in the IPRs as prior art. And the reasons for allowance here is a generic reason for allowance. We find the claims patentable. I'm trying to remember the exact language here. Let's see here. I can't find it right now. But it's a generic reason for allowance. It doesn't call out these references at all. In fact, these references aren't even discussed by the examiner. They're part of an IDS with 40-plus other references. And at the board hearing, counsel was asked to try to connect the dots here. Is there any disclaimer in the prosecution history regarding these references? Is there any teaching in the prosecution history regarding surround frame that the board could grasp onto to look at, you know, did the patentee limit it in some way? And there's nothing there. Counsel couldn't connect those dots because there's no dots to be connected. These references are simply part of an IDS. And we don't know why the examiner allowed the claims over these references. It could have been because he didn't think they had a surround frame. It could have been for any other number of reasons. There's just nothing in the record. And there's nothing legally that Mr. Richman cites in the context of this argument that would say that somehow acquiescing to a generic notice of allowance somehow affects claim construction, as Your Honor noted. The argument is factually flawed, and it's legally flawed, and it's wrong. So turning to a couple of the other arguments, really the extrinsic evidence arguments. Can you address the waiver arguments that you made? Yes, I can, Your Honor. So as we pointed out, the original construction here, the first construction was, I don't remember how many words, but that was sort of in the preliminary response. Then in the actual response, Mr. Richman set forth a 92-word construction that had a bunch of limitations in it relating to what the surround frame is and negative limitations as to what it isn't. It must surround in at least 270 degrees. It must not substantially conceal or cover the lens, things like that. That is the argument that was made, the construction that was presented to the board. That is the construction we argued through the entire case. And as counsel stated, that construction is narrower than the construction that he is proposing now. So my understanding on the law of this issue is you can't change the scope of the claim on appeal. Here the scope of the claim has changed. We go from limitations in there that the degree of completeness of the surrounding must be at least 270 degrees, like a door frame. All that stuff is gone. I think this argument has been waived. If he wanted to present this construction before the board, he should have done so. Now on appeal, the board didn't pass on this construction at all. The board passed on the 92-word construction below. The scope of the claim has changed, and I think this argument has been waived. With that, I'll turn maybe briefly to the wind chimes for a minute. Mr. Richman makes two arguments with respect to the wind chime claims, both of which were before the board and both of which were passed on by the board. The main argument here is that there was no motivation to combine this Ku-Bay and the Ouyang references. Not that the references together don't teach the claimed invention, but there was no motivation to combine. That's an issue of fact, and here substantial evidence supports that there was a motivation to combine. The arguments that Mr. Richman makes, and we touched on the glare argument just a little while ago, that argument kind of comes in two flavors. Mr. Richman relies on some statements made by petitioner's expert, Dr. Shackle, who did say that designers abhor glare and that glare is a big-time consideration. But those statements are made in the abstract, talking about glare in the abstract. And petitioners thought those statements were prejudicial and actually moved to exclude them at the board level because of that, because they were made in the abstract and they were now trying to be used to argue you shouldn't combine these references. And the board considered that, and the board rejected our argument and said, no, we do find these statements relevant. And the board looked at not only these statements, but the entirety of Mr. Shackle's deposition testimony, which is all in the record, and the board concluded, no, there is motivation to combine here. And we think this court should do the same. There's nothing in the Shackle deposition testimony, in our view, that these references teach away. Again, as the board noted, maybe one of the big complaints here is that the board didn't write enough about glare. There's no doubt the board considered it. It said it did. It just didn't find it relevant in the scheme of the entirety of the evidence. Turning to the substantial evidence, well, let me back up for a second here. So the other flavor of this argument is the illumination effect versus display effect argument. But as the board found, the Richmond patent itself doesn't use the word glare. The claims don't use the word glare. The Kube reference doesn't use the word glare, to my knowledge. Nor does the Ouyang reference. Neither of the references, nor the patent, uses the terms display effect, illumination effect, or any of this stuff. The board considered all of that, looked at what the references themselves taught, looked at 10 or 15 pages worth of testimony from Dr. Shackle, on motivation to combine, that's at 826.91 through 827.08, and concluded that there is motivation to combine here. And legally speaking, for references to teach away from one another, like the argument they're making, there needs to be more than... There actually needs to be more than simply something that... The quote from one of the cases, a reference must actually discourage a person of ordinary skill in the art, not simply express a general preference for something. Here the references don't even do that. They're totally silent on this glare, display effect, illumination effect argument. And bottom line on this argument, the board considered it, substantial evidence supports it, there's no reason for this court to alter that decision. The second flavor of the arguments with respect to motivation to combine that's made is that the references wouldn't operate for their intended purposes if you combine them. And that's relying on a piece of the Kube reference that he's reading doesn't teach detachable chimes. But the Kube reference is very broad in its teaching. It talks about a wide variety of fixtures. It talks about that the fixtures can even add circuitry to further indicate a wide variety of effects. And again, there's no evidence in the record that we can see that talks about the board that would indicate that these references wouldn't be combinable. And again, there's six or seven paragraphs, I believe, of Dr. Shackle's declaration that support that argument. The last thing that I'll touch on briefly here is counsel mentioned Claim 4 briefly. So the surround frame issue, if the court affirms that ends the issue with respect to Claims 1 through 3 and 48 through 50, there's an additional argument with respect to Claim 4, and that is that the combination of the Norton and Chen references, even under the board's construction, don't teach Claim 4. And that argument is based on Claim 4 is the language where the surround frame must partially encircle the lattice. So this also would be a question of fact as to what the references did or did not teach, and substantial evidence supports that the references do teach Claim 4. The Norton reference, the figure that's relied on, one of the figures that's relied on, is a rose that's a decorative element that then has a lens on the top, and the rose at the top circles the lens and then comes down in sort of a tulip-y shape to the bottom. But the Norton reference discloses a lot more than simply the picture of a rose. It talks about that this decorative element, which is the surround frame, has broad applicability. It comprises any shape or configuration, maybe holiday-themed, et cetera. But the internal protective element that this decorative element connects to is universally compatible with it. Again, indicating that this decorative surround frame can have a variety of shapes. And the board asked some questions, and it looked at it, and if you look at the Norton reference, even the rose one, if you look at it from the top, it is partially, well, it's actually fully encircling the lens in cross-section from the top. And the board also, I think, indicated a statement from counsel in connection with the meaning of surround frame and the construction of it. Counsel made a statement, or Judge Grossman made a statement, that how would something that's surrounded in three dimensions not also fully encircle, meaning the surround frame? And counsel said, well, yes, it does fully encircle it. And granted, that statement was made in the context of figure 11, but the question that Judge Grossman asked was broader, and counsel's original answer was broader, and then we got back into figure 11. And I think the board also picked up on that. But bottom line, there was certainly substantial evidence in the record to support the finding of claim four. I think we'll stand on the papers with respect to the rest of the arguments. We thank the court very much and respectfully ask that the court affirm the board's findings in all regards. Thank you. Thank you, Mr. Nelson. Mr. Steele? I think he has less than two minutes. Yes, I'll address on the claim four. The call to counsel was from the board counsel. They said, well, if you surround in two or three dimensions, it seems like you can only encircle in two dimensions then, right? So encircle would be planar. In fact, the board and counsel, or that is Coleman, agreed that the board had found that encircle implies circular, which is a planar structure by definition. So as far as claim four goes, the encircling limitation is not met by Norton unless you magically draw an arbitrary plane, cut it through the middle of it somewhere. But somewhere is from infinite somewheres. You cannot just decide I want a circle, so I'll find a circular cross section. In fact, the only circular part of Norton's shell is actually the bottom at the base where it connects to the post. Okay, I think, Mr. Shills, we're out of time. And that violates the illumination from below, Your Honor.